UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CHRISTINE JAMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:04CV102 CDP |
| | ) |
| MECOM, LTD., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Christine James worked at Mecom, Ltd.'s manufacturing facility in Ste. Genevieve, Missouri. James contends that she was wrongfully discharged several months after sustaining a lower back injury on the job. She brings claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.780. Mecom moves for summary judgment. For the reasons that follow, I will grant Mecom's motion on James' claim under the ADA, but will deny Mecom's motion as to her workers' compensation claim.

**Background**

James was employed at Mecom checking vinyl siding samples for defects, a job that required heavy lifting and moving of materials. She sustained an on-the-job injury to her back on December 8, 1999. James filed for worker's compensation

benefits and was on disability leave until March 6, 2000, when her physician, Dr. Covert, released her to return to work. At that time, Dr. Covert restricted James' lifting to medium work demand level and indicated that she could occasionally lift 20-50 pounds, frequently lift 10-25 pounds, and could continuously lift 0-10 pounds.

By March 6, 2000, James had made improvements in her mobility and fitness, and she was not limited in sight, vision, hearing or breathing. Her own testimony indicates that she was able to walk, drive a vehicle, care for her three-year old child, cook home meals, and "just take care of the normal things I did before." Further, when asked whether there was anything she could not do with regard to caring for her children following her release, James stated, "I was able to do all things but with minimal lifting." Finally, in her deposition James claimed to be able to sit or stand for two hours, to open jars, reach and get things out of her kitchen cabinets, and engage in a sexual relationship.

James filed an affidavit in opposition to the summary judgment motion. In it she asserts that following her doctor's release on March 6, 2000, she continued to have problems with sitting, standing, reaching, stooping, sleeping, running, driving, and pushing. She asserts that while she can manage many daily activities, she does so with extreme pain. Among other things, she claims that she cannot sleep for more than two or three hours at a time and that she cannot sit for more than an hour

without pain. As a result of her injuries, James' doctor stated at the time of her return to work that she cannot perform jobs in the heavy demand level.

On March 7, 2000, James reported to Mecom for work. James asserts that when she reported to work she was initially told to report to the assembly department by Larry Vogt. Later that morning Sylvia Biermann, Mecom's personnel manager, told her that she could not work for Mecom any longer and asked, "What did you think you could do, stay on Workers' Compensation the rest of your life?"

Mecom asserts that James was not terminated. Instead, Mecom asserts that James met with Sylvia Biermann and then later with Gary Biermann. Mecom claims that Gary Biermann told James that there were no jobs at Mecom that did not require any lifting and that the company would try to find other work if she could provide specific information from her doctor spelling out exactly what she could or could not do. Mecom asserts that James left the premises after this conversation and did not return.

James obtained new employment approximately three weeks after she left Mecom. Since leaving Mecom, she has worked at Dix's Greenhouse planting flowers, at Handi-Craft, a factory, doing machinery work, and at Walker's Association doing home healthcare. James left the employment of Walker's

Association in preparation for the birth of her child. Following her child's birth, James has not sought employment.

## Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## Discussion

**1. Workers' Compensation Claim**

James alleges that Mecom terminated her in retaliation for her filing a

workers' compensation claim.  Mo. Rev. Stat. § 287.780 states that "[n]o employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter.  Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer."  Under Missouri law, the plaintiff must prove the following elements to establish a retaliatory discharge claim under the Workers' Compensation Law: (1) plaintiff was an employee of the defendant before injury; (2) plaintiff exercised a right granted by the Act; (3) defendant discharged the plaintiff; and (4) an exclusive causal relationship exists between plaintiff's actions and defendant's actions.  St. Lawrence v. Trans World Airlines, Inc., 8 S.W.3d 14, 149 (Mo. Ct. App. E.D. 1999).

Mecom argues that James has failed to present sufficient evidence to support the third and fourth elements of this claim.  Specifically, Mecom asserts that James was not terminated.  Mecom relies upon the affidavit of Gary Bierman in which he states that he met with James and told her that the company did not have any jobs that did not require any lifting and that the company would try to find her other work if she could provide specific information from her doctor spelling out what she could or could not do.  Mecom also has presented evidence showing that it continued to pay James' life insurance premium for two years and that it reported to the Missouri

Division of Employment Security that James had not been terminated.

James' affidavit states that she never spoke with Gary Biermann, but that Sylvia Biermann told her that she could no longer work for Mecom. James also asserts that Sylvia Biermann asked, "What did you think you could do, stay on workers' compensation the rest of your life?"

Genuine disputes of material fact exist surrounding the ending of James' employment at Mecom. Disputes exist regarding what the parties said and did, whether James was terminated, and whether that had any relation to her workers' compensation claim. Resolution of these issues depends on credibility determinations that cannot be made at this stage of the proceedings. See Kummer v. Royal Gate Dodge, Inc., 983 S.W.2d 568, 572 (Mo. Ct. App. E.D. 1998) (conflicting testimony from an employer and an employee regarding the real reason for the employee's discharge precluded summary judgment on the employee's § 287.780 claim); Hansome v. Northwestern Cooperage Co., 679 S.W.2d 273, 275-76 (Mo. 1984) (same). As a result, Mecom is not entitled to summary judgment on James' workers' compensation claim.

**2. ADA Claim**

As an initial matter, I must consider Mecom's assertion that the medical report of Dr. J. H. Morrow should be disregarded. Plaintiff submitted the report as

part of her opposition to the summary judgment motion. Dr. Morrow's report contains his diagnosis, conclusions, and recommendations, but it is not verified or otherwise made under oath. James herself, of course, cannot provide an evidentiary foundation because she did not have personal knowledge of the matters in the report.

Additionally, even if the opinion had been properly authenticated, it would not be admissible because James failed to disclose her treatment by Dr. Morrow during discovery. When a party fails to disclose information as required by Rule 26(a), which includes discovery obtained by interrogatories and requests for admissions, the evidence shall be inadmissible at trial. Fed. R. Civ. P. 37(c)(1). Additionally, "the failure to disclose in a timely manner is equivalent to failure to disclose," and a party must produce the required evidence "within deadlines set by the court or risk sanctions under Rules 16 and 37." Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998).

The initial Case Management Order required plaintiff to disclose, by April 3, 2006, all treating health care professionals she expected to provide testimony at trial. The order required her to provide the witnesses' medical records and to make the witnesses available for deposition no later than May 1. James did not disclose Dr. Morrow or any other experts by these deadlines. Additionally, after James

failed to respond to discovery, I granted defendant's motion to compel and, on January 26, 2006, ordered James to respond to Mecom's discovery requests, which included an interrogatory regarding medical treatment. James did not disclose Dr. Morrow in her answers, even though, according to the report, she had seen him on September 16, 2000. James' failure to disclose Dr. Morrow as required by the rules and by two different court orders is inexcusable, and Mecom has been prejudiced because it did not have an opportunity to discover the opinion or to rebut it. I therefore will not consider this evidence.

James' Complaint alleges that she was terminated because of her disability in violation of the ADA. James contends that she is disabled because her back, hip, and leg injuries substantially limit her in the major life activities of working, performing manual tasks, and sitting, standing, and bending. Mecom asserts that James is not disabled as a matter of law. Because there are no genuine issues of material fact and the undisputed evidence shows that James is not disabled, Mecom is entitled to summary judgment on the ADA claim.

The ADA prohibits employers from discriminating against qualified disabled individuals on account of their disability. 42 U.S.C. § 12112(a). As a threshold matter, James must show that she is disabled within the meaning of the ADA. See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995).

The ADA defines disability to include "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities include hearing, speaking, breathing, learning, and working, as well as sitting, standing, lifting and reaching." Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1088 (8th Cir. 2001) (internal citation omitted). "Substantially limits" means unable to perform a major life activity that the average person in the general population can perform, or significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). The following factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. Id. § 1630.2(j)(2)(i)-(ii).

The Eighth Circuit has indicated that working is a major life activity that, if substantially limited by an impairment, brings an individual within the protections of the ADA. Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1474 (8th Cir. 1996). Still, the inability to perform a single, particular job does not establish a substantial limitation in the major life activity of working. Id. The impairment must

significantly restrict the plaintiff's ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. Aucutt v. Six Flags Over Mid America, 85 F.3d 1311, 1319 (8th Cir. 1996). Whether an impairment constitutes a significant barrier involves an individualized assessment of the extent to which the allegedly disabling condition limited the plaintiff's meaningful opportunities for employment. Webb v. Garlick Mfg. Co., 94 F.3d 484, 488 (8th Cir. 1996).

The Eighth Circuit has consistently held that a general lifting restriction without more is not sufficient to constitute a disability under the ADA. Nuzum v. Ozark Automotive Distrib., Inc. 432 F.3d 839, 844 (8th Cir. 2005); Mellon v. Fed. Express Corp., 239 F.3d 954, 957 (8th Cir. 2001); Webner v. Titan Distrib., Inc., 267 F.3d 828, 834 (8th Cir. 2001). A lifting restriction can translate across a broad spectrum of physically demanding jobs. To be considered substantially limited in a major life activity, the plaintiff would have to prove that the "limitation forecloses the broad category of jobs for which [plaintiff's] background and skills otherwise would fit [her]." Nuzum, 432 F.3d at 848. There is no evidence that jobs with James' limitations are not generally available within a reasonable geographical area. James admits that she was readily able to find other employment even with her restriction on lifting. The undisputed evidence fails to generate a genuine issue of

material fact that James' has suffered a significant reduction in meaningful employment opportunities.

James also contends that she is limited in the major life activity of manual tasks. The undisputed evidence also fails to establish a genuine issue of material fact with regard to James' ability to perform manual tasks as a result of the impairment to her back. The relevant inquiry when addressing the major life activity of performing manual tasks is "whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [her] specific job." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 200-201 (2002). The type of evidence most relevant to this inquiry includes, for example, an individual's ability to do household chores, bathe, brush one's teeth, prepare meals, do laundry, etc. Id. at 201-203.

The undisputed evidence shows that James does not have a substantial limitation in the ability to perform manual tasks. First, James admitted in her deposition that her only restriction was lifting. She also testified that by March 2000, she did not have a problem walking. She was able to "take care of the normal things [she] did before" and she "was able to do all things but with minimal lifting." Finally, James' deposition testimony established that she was able to drive a vehicle, care for her three-year old child, cook home meals, open jars, reach and get things

out of her kitchen cabinets, and engage in a sexual relationship.

In her affidavit, James asserts that she has pain and muscle spasms in her back. She claims to have difficulty performing daily tasks at home, including the ability to stoop, to get up, to push, to walk, to drive, and to sleep. This testimony directly contradicts the sworn deposition testimony she gave earlier. Where an affidavit directly contradicts earlier deposition testimony, the affidavit is insufficient to create a genuine issue of material fact. See City of St. Joseph v. Southwestern Bell Tel., 439 F.3d 468, 476 (8th Cir. 2006).

Even if James' statements in her affidavit are viewed in the most favorable light, they do not create an issue of material fact. The limitations James describes in her affidavit do not amount to a substantial limitation on a major life activity. With regard to most of the activities, James does not contend that she cannot preform the activities, she merely indicates that such things may be painful. While James does contend that she cannot stoop, this by itself is not a substantial limitation on a major life activity, as stooping is not a major life activity.

James' claims that she has difficulty sitting or standing for long periods of time also do not establish a substantial limitation on a major life activity. Under the Williams standard, a person is substantially limited in the ability to perform a major life activity when that person is unable to perform the variety of tasks central to

most people's daily lives. 534 U.S. at 200-201. The Eighth Circuit has indicated that "limitations on basic motor functions, such as sitting or standing, were not substantial because they did not meet the Williams standard, even though the functions at issue were neither 'tasks,' nor 'manual,' at least not in the sense of involving the hands." Nuzum, 432 F.3d at 845 (citations omitted). Therefore, in order to establish a substantial limitation on a major life activity arising from limitations on sitting and standing, James would have to establish that these limitations "impacted tasks central to most people's daily lives." Id. (quoting Philip v. Ford Motor Co., 328 F.3d 1020, 1025 (8th Cir. 2003). James cannot establish that her sitting and standing limitations have affected such tasks. James admits that she is able to care for her family and has been able to hold several jobs. Therefore, James has not established a substantial limitation as to sitting or standing.

James also asserts that she has difficulty sleeping. Although sleeping may be a major life activity, James' claims do not show a substantial limitation. Nuzum, 432 F.3d at 846-848. James asserts that she can only sleep for two or three hours at a time, but she does not indicate what total amount of sleep she is able to get each night. In order to establish that James was substantially limited in the major life activity of sleeping, she is required to establish "that she was unable to sleep or was significantly restricted as to the condition, manner, or duration of her ability to sleep

as compared to the average person in the general population." Pack v. Kmart Corp., 166 F.3d 1300, 1306 (10th Cir. 1999).

James does not assert that she has attempted to take sleep aid medications, nor is there any evidence that James has sought medical treatment for her sleep problems. She does not assert that her sleep problems are permanent in nature, nor does she offer any evidence regarding the number of hours that an average person sleeps per night. The only evidence presented by James with regard to her sleeping problems are the bare allegations that she can only sleep for two or three hours at a time. These allegations do not establish a substantial limitation as to sleep. Id. (episodes of sleep disruption where the plaintiff sometimes only got two or three hours of sleep a night were not a substantial limitation where there was no evidence her problems were severe, long term, or had a permanent impact); see also Colwell v. Suffolk Cty. Police Dep't, 158 F.3d 635, 644 (2nd Cir. 1998) (plaintiff must establish that his sleep problems are worse than those suffered by a large portion of the adult population because "[d]ifficulty sleeping is extremely widespread") ; Rieger v. Orlor, Inc., 427 F. Supp. 2d 105, 117 (D. Conn. 2006) (a plaintiff who woke after 2-3 hours of sleep and stayed awake for 3-4 hours had not established that she had a substantial limitation where there was no showing of the sleeping habits of the average person in the general population); Taylor v. West Penn

Allegheny Gen. Hosp., 2005 WL 3113187, at *5 (W.D. Pa. Nov. 21, 2005) (a plaintiff's affidavit that she had sleepless nights because of a herniated disc did not present an issue of material fact that she had a substantial limitation as to sleeping); Squibb v. Mem'l Med. Ctr., 2006 WL 988458, at *15 (C.D. Ill. April 13, 2006) (plaintiff failed to establish that she was substantially limited due to back pain which caused her to sleep only 3-4 hours a day).

When viewed in the light most favorable to James and giving her the benefit of all reasonable inferences that can be drawn from the facts, the evidence shows that there are no genuine issues of material fact regarding whether James is disabled within the meaning of the ADA. As a result, Mecom is entitled to summary judgment on James' ADA claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Mecom's motion for summary judgment [#28 ] is granted only as to Christine James' ADA claim (Count I) and is denied as to her Missouri Workers' Compensation Law claim (Count II).

The parties are reminded that this case is set for jury trial on **November 13, 2006 at 9:00 a.m.**, and that their pretrial submissions must be filed by **October 24, 2006**. Plaintiff's counsel is specifically reminded that he has used up all of the Court's available grace with respect to late filings, and I expect him to comply fully

with all remaining deadlines. This is the only case remaining on the November 13 docket and the parties should be in court and ready to begin with jury selection promptly at 9:00 a.m.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of October, 2006.